No. 26-60238

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

AMAZON.COM SERVICES LLC
Petitioner/Cross-Respondent

and

AMAZON LABOR UNION NO. 1, INTERNATIONAL BROTHERHOOD OF TEAMSTERS
Petitioner

v.

NATIONAL LABOR RELATIONS BOARD
Respondent/Cross-Petitioner

---

ON PETITIONS FOR REVIEW AND CROSS-APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD

---

# BRIEF FOR RESPONDENT/CROSS-PETITIONER THE NATIONAL LABOR RELATIONS BOARD

---


ERIC WEITZ
*Attorney*

National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
(202) 273-3757

CRYSTAL S. CAREY
*General Counsel*
LYNISA B. MICHALSKI
*Acting Deputy General Counsel*
PETER SUNG OHR
*Associate General Counsel*
RUTH E. BURDICK
*Deputy Associate General Counsel*
MEREDITH JASON
*Assistant General Counsel*

National Labor Relations Board

## STATEMENT REGARDING ORAL ARGUMENT

Although this is ultimately a straightforward case involving settled legal standards and the National Labor Relations Board's reasonable exercise of its broad statutory discretion to decide union-representation questions, oral argument would likely assist the Court in resolving the issues raised on appeal.

## TABLE OF CONTENTS

**Headings** **Page(s)**


Statement regarding oral argument ....... i

Table of contents ....... ii

Table of authorities ....... iv

Statement of jurisdiction ....... 1

Statement of the issues ....... 2

Statement of the case ....... 3

I. The Board's findings of fact ....... 3

A. Amazon's employees seek to form a union. ....... 4

B. Smalls is arrested in the JFK8 parking lot ....... 5

C. The five-day election commences; Board agents attempt to police a no-electioneering zone ....... 7

D. Several heated arguments occur on the first day of the election ....... 8

E. The Union wins the election; Amazon files objections ....... 9

II. Procedural history ....... 10

III. The Board's conclusions and Order ....... 12

Summary of argument ....... 12

Standard of review ....... 16

Argument ....... 17

## TABLE OF CONTENTS

**Headings** **Page(s)**


I. The Board reasonably rejected Amazon's election objections and determined that such objections, considered both individually and cumulatively, did not warrant invalidating the election ............................17

A. Prospective voters would not have been coerced by the Union President's unsanctioned visits to the JFK8 parking lot .........................19

B. Amazon failed to show that any pending voters were aware of inappropriate remarks made toward an individual employee .................24

C. It is not possible that hundreds of employees were prevented from voting during an alleged brief delay in opening the polls..............31

D. Board agents did not disparately enforce a no-electioneering rule inside the voting area .....................................................................36

E. The Board reasonably found that the cumulative impact of Amazon's various objections did not require a new election .................41

II. Amazon was not denied due process at the post-election objections hearing or prejudiced by any of the Hearing Officer's rulings. ..................47

A. The Regional Director and the Hearing Officer permitted Amazon to fully litigate its election objections ..................................................48

B. The participation at the hearing of representatives for Region 29 was entirely proper and did not prejudice Amazon ................................53

III. The Board reasonably declined to order additional remedies against Amazon for its unlawful refusal to bargain ...............................................55

Conclusion ..........................................................................................................58

Certificate of service ...........................................................................................59

Certificate of compliance .....................................................................................60

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*800 River Rd. Operating Co. v. NLRB*,
846 F.3d 378 (D.C. Cir. 2017) ..... 47, 53

*Athbro Precision Eng'g Corp.*,
166 NLRB 966 (1967) ..... 37

*Avis Rent-A-Car Sys.*,
280 NLRB 580 (1986) ..... 19, 25, 42

*Baja's Place, Inc.*,
268 NLRB 868 (1984) ..... 19, 22

*Boire v. Greyhound Corp.*,
376 U.S. 473 (1964) ..... 2

*Boston Insulated Wire & Cable Sys. v. NLRB*,
703 F.2d 876 (5th Cir. 1983) ..... 16

*Bronx Lobster Place LLC*,
Board Case No. 02-RC-191753, 2018 WL 721396 (Feb. 2, 2018) ..... 34

*Colgate Scaffolding & Equip. Corp.*,
354 NLRB 544 (2009) ..... 32, 34, 35

*Con-way Freight, Inc. v. NLRB*,
838 F.3d 534 (5th Cir. 2016) ..... 16, 18, 28, 44, 47

*Creative Vision Res. LLC v. NLRB*,
882 F.3d 510 (5th Cir. 2018) ..... 30

*Edward J. DeBartolo Corp.*,
313 NLRB 382 (1993) ..... 19, 20

*Exela Enter. Sols. v. NLRB*,
32 F.4th 436 (5th Cir. 2022) ..... 18

*Exeter 1A Ltd. v. NLRB*,
596 F.2d 1280 (5th Cir. 1979) ..... 45

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Extendicare Health Servs., Inc.*,
347 NLRB 544 (2006) ....................35

*ExxonMobil Rsch. & Eng'g Co.*,
132 F.4th 337 (5th Cir. 2025) .................... 16, 17

*Fam. Serv. Agency S.F. v. NLRB*,
163 F.3d 1369 (D.C. Cir. 1999)....................22

*Fibreboard Paper Prods. v. NLRB*,
379 U.S. 203 (1964)....................56

*Flex Frac Logistics LLC v. NLRB*,
746 F.3d 205 (5th Cir. 2014) .................... 18, 28, 45, 51

*Glacier Packing Co.*,
210 NLRB 571 (1974) ....................37

*Hallmark Phoenix 3, LLC v. NLRB*,
820 F.3d 696 (5th Cir. 2016) ....................23

*Hudson Oxygen Therapy, Inc.*,
268 NLRB 1374 (1984), *enforced*,
764 F.2d 729 (9th Cir. 1985) ....................18

*In-N-Out Burger, Inc. v. NLRB*,
894 F.3d 707 (5th Cir. 2018) ....................16

*Laidlaw Transit, Inc.*,
327 NLRB 315 (1998) ....................54

*Marathon LeTourneau Co. v. NLRB*,
699 F.2d 248 (5th Cir. 1983) ....................47

*Midland Nat'l Life Ins.*,
263 NLRB 127 (1982) ....................21

*Nabisco, Inc. v. NLRB*,
738 F.2d 955 (8th Cir. 1984) ....................31

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Natchez Coca-Cola Bottling Co. v. NLRB*,
750 F.2d 1350 (5th Cir. 1985) ....................................................................46

*NLRB v. Con-Pac, Inc.*,
509 F.2d 270 (5th Cir. 1975) .................................................................. 50, 54

*NLRB v. Dal-Tex Optical Co.*,
310 F.2d 58 (5th Cir. 1962) ........................................................................47

*NLRB v. Dobbs Houses, Inc.*,
435 F.2d 704 (5th Cir. 1970) ......................................................................46

*NLRB v. Donnelly Garment Co.*,
330 U.S. 219 (1947)................................................................................ 46, 53

*NLRB v. Earle Indus.*,
999 F.2d 1268 (8th Cir. 1993) ....................................................................22

*NLRB v. Hood Furniture Mfg.*,
941 F.2d 325 (5th Cir. 1991) ................................................... 17, 18, 19, 27

*NLRB v. Klingler Elec. Corp.*,
656 F.2d 76 (5th Cir. 1981) ............................................................ 18, 31, 44

*NLRB v. Laney & Duke Storage Warehouse*,
369 F.2d 859 (5th Cir. 1966) ......................................................................17

*NLRB v. McCarty Farms, Inc.*,
24 F.3d 725 (5th Cir. 1994) .................................................................... 30, 45

*NLRB v. Monroe Auto Equip.*,
470 F.2d 1329 (5th Cir. 1972) ....................................................................44

*NLRB v. Nat'l Fixtures, Inc.*,
574 F.2d 1305 (5th Cir. 1978) ....................................................................49

*NLRB v. Safway Steel Scaffolds Co.*,
383 F.2d 273 (5th Cir. 1967) ......................................................................47

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*NLRB v. Sumter Plywood Corp.*,
535 F.2d 917 (5th Cir. 1976) ........................................................................45

*NLRB v. White Knight Mfg.*,
474 F.2d 1064 (5th Cir. 1973) ................................................................ 28, 44, 48

*Pea Ridge Iron Ore Co.*,
335 NLRB 161 (2001) ......................................................................... 32, 34

*Phillips Chrysler Plymouth, Inc.*,
304 NLRB 16 (1991) ....................................................................... 21, 22, 45

*Polymers, Inc.*,
174 NLRB 282 (1969), *enforced*,
414 F.2d 999 (2d Cir. 1969)........................................................................ 31, 42

*Precision Prods. Grp.*,
319 NLRB 640 (1995) ........................................................................49

*Prof'l Transp., Inc.*,
370 NLRB No. 132, 2021 WL 2658293 (June 9, 2021) ....................................35

*PruittHealth-Virginia Park LLC v. NLRB*,
888 F.3d 1285 (D.C. Cir. 2018)........................................................................46

*Refresco Beverages US, Inc.*,
Board Case No. 22-RC-276628, 2022 WL 1046078 (Apr. 5, 2022)..................35

*Trencor, Inc. v. NLRB*,
110 F.3d 268 (5th Cir. 1997) ........................................................................21

*U-Haul Co. of Nevada*,
341 NLRB 195 (2004) ......................................................................... 36, 37

*UNF W., Inc. v. NLRB*,
844 F.3d 451 (5th Cir. 2016) .......................................................... 17, 29, 47, 56

*United States v. Poole*,
735 F.3d 269 (5th Cir. 2013) ........................................................................55

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*United States v. Stalnaker*,
571 F.3d 428 (5th Cir. 2009) ....................................................................51

*Vicksburg Hosp. v. NLRB*,
653 F.2d 1070 (5th Cir. 1981) ..................................................................44

*Werthan Packaging*,
345 NLRB 343 (2005) ..............................................................................27

*Westwood Horizons Hotel*,
270 NLRB 802 (1984) ..............................................................................29

*Wolverine Dispatch*,
321 NLRB 796 (1996) ........................................................................ 32, 34

**Statutes** **Page(s)**

National Labor Relations Act, as amended
(29 U.S.C. §§ 151, et seq.)

Section 8(a)(1) (29 U.S.C. § 158(a)(1)).................................................... 12, 17
Section 8(a)(5) (29 U.S.C. § 158(a)(5)).................................................... 12, 17
Section 9(d) (29 U.S.C. § 159(d))...............................................................2
Section 10(a) (29 U.S.C. § 160(a)) .............................................................2
Section 10(c) (29 U.S.C. § 160(c)) ............................................................56
Section 10(e) (29 U.S.C. § 160(e)) .................................................. 2, 23, 30, 41
Section 10(f) (29 U.S.C. § 160(f)) ..............................................................2

**Regulations** **Page(s)**

29 C.F.R. § 102.67(d) ...............................................................................35
29 C.F.R. § 102.67(e)................................................................................30
29 C.F.R. § 102.69(c)...................................................................... 30, 48, 49

**Other Authorities** **Page(s)**

NLRB Casehandling Manual, Part 2: Representation Proceedings ................. 49, 50

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

---

**No. 26-60238**

---

**AMAZON.COM SERVICES LLC**
**Petitioner/Cross-Respondent**
**and**

**AMAZON LABOR UNION NO. 1, INTERNATIONAL BROTHERHOOD OF TEAMSTERS**
**Petitioner**
**v.**

**NATIONAL LABOR RELATIONS BOARD**
**Respondent/Cross-Petitioner**
**and**

**AMAZON LABOR UNION NO. 1, INTERNATIONAL BROTHERHOOD OF TEAMSTERS**
**Intervenor**
**and**

**AMAZON.COM SERVICES LLC**
**Intervenor**

---

**ON PETITIONS FOR REVIEW AND CROSS-APPLICATION FOR ENFORCEMENT OF AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD**

---

**BRIEF FOR THE NATIONAL LABOR RELATIONS BOARD**

---

## STATEMENT OF JURISDICTION

This case is before the Court on the petitions of Amazon.com Services LLC ("Amazon") and Amazon Labor Union No. 1, International Brotherhood of Teamsters ("the Union") for review, and the cross-application of the National

Labor Relations Board ("the Board") for enforcement against Amazon, of a Decision and Order issued by the Board on April 1, 2026, reported at 374 NLRB No. 82. The Board had jurisdiction over the unfair-labor-practice proceeding below pursuant to Section 10(a) of the National Labor Relations Act, 29 U.S.C. §§ 151, et seq. ("the Act"). 29 U.S.C. § 160(a). This Court has jurisdiction pursuant to Section 10(e) and (f) of the Act. 29 U.S.C. § 160(e), (f). The petitions and cross-application are timely, as the Act provides no time limit for such filings.

The Board's Order is based on findings made in an underlying representation proceeding involving a Board-supervised election. The record in that proceeding, Board Case 29-RC-288020, is also before the Court pursuant to Section 9(d) of the Act. 29 U.S.C. § 159(d); *Boire v. Greyhound Corp.*, 376 U.S. 473, 477-79 (1964).

**STATEMENT OF THE ISSUES**

The present case is before the Court on review of the Board's Order finding Amazon committed an unfair labor practice by refusing to bargain with the Union as the majority representative of Amazon's employees. (ROA.10252-10256.)[1] Amazon's petition for review of that Order is predicated on its challenges to the certification of the Union in an underlying representation proceeding following a secret-ballot election. Those challenges turn on the following questions:

---

[1] "ROA" references are to the record filed with the Court. References preceding a semicolon are to the Board's findings; those following are to supporting evidence. "Amazon-Br." and "Union-Br." refer to the petitioners' opening briefs.

1. Did the Board reasonably reject Amazon's election objections and determine that such objections, considered both individually and cumulatively, did not warrant invalidating the election?

2. Was Amazon denied due process at the post-election objections hearing or prejudiced by any of the procedural and evidentiary rulings it disputes?

The Union's petition for review challenges the sufficiency of the Board's Order in the unfair-labor-practice proceeding, which turns on a third question:

3. Did the Board reasonably decline to order additional remedies against Amazon for its unlawful refusal to bargain?

## STATEMENT OF THE CASE

## I. THE BOARD'S FINDINGS OF FACT

The factual findings relevant to the issues raised on appeal are summarized below. Preliminarily, the Court should disregard Amazon's mistaken assertion that the narrative of the election included in its opening brief is mostly "undisputed." (Amazon-Br.8 n.1.) As to factual assertions therein unrelated to the specific claims of objectionable conduct actually explicated in Amazon's brief and preserved on appeal, which are addressed below, *see infra* pp. 17-55, the Court should refer to the detailed findings in the agency decisions. (ROA.9682-9688, ROA.9755-9897, ROA.10025-10062.) The Court should also disregard Amazon's citations to news stories and other extra-record materials not admitted at the evidentiary hearing.

### A. Amazon's Employees Seek To Form a Union

Amazon is engaged in the retail sale of consumer products, including from a fulfillment center in Staten Island, New York, known as the "JFK8" building. (ROA.10253; ROA.187-188.) Amazon employs approximately 8,300 employees at the JFK8 building. (ROA.10025; ROA.6974.) In 2021, the Union, then unaffiliated and known as Amazon Labor Union, began a campaign to organize the JFK8 employees. (ROA.3968-3969.) With the exception of the Union's then-President, Chris Smalls, the officers of the Union were all current JFK8 employees. (ROA.3722-3728.) Smalls was a former JFK8 employee. (ROA.2451.)

As part of its organizing campaign, Smalls and other union supporters would visit the sidewalks and parking lot outside the JFK8 facility to meet with workers and to solicit support for the union campaign. (ROA.9862.) These areas on the periphery of Amazon's leased property were generally open to visitors, food-delivery workers, and other non-employees. (ROA.9862; ROA.2395-2396.) In December 2021, Amazon sent the Union two cease-and-desist letters requesting that non-employees stop soliciting on its property. (ROA.9862; ROA.5727-5732.)

On December 22, the Union filed a petition with the Board's Region 29 in Brooklyn, New York, seeking a Board-supervised election. (ROA.6935.) The parties subsequently entered into a stipulated election agreement setting forth the details of a five-day, in-person election scheduled for March 2022. (ROA.6965.)

Between December 2021 and March 2022, Amazon conducted an extensive anti-union campaign involving, inter alia, hundreds of signs posted throughout the JFK8 building. (ROA.9855-9860, ROA.9686; ROA.190-197, ROA.503-526.) In addition, on February 7, Amazon began holding small-group meetings to dissuade employees from supporting the Union. (ROA.9855-9860; ROA.190-197.) A group of pro-union employees, including several elected union officers, interrupted one of these meetings—one of twenty-five scheduled for the same day—to protest Amazon's tactics. (ROA.9855-9860; ROA.196-235.) Amazon continued to hold such meetings every day for the 6 weeks leading up to the election, with each employee mandated to attend two to six meetings. (ROA.9686; ROA.503-510.) In mid-February, several union-affiliated employees were caught on CCTV tearing down six of Amazon's posters. (ROA.9686; ROA.294-309.) Amazon replaced the posters and the employees involved were disciplined, after which no additional posters were removed. (ROA.9860-9861; ROA.300-301, ROA.530-531.)

### B. Smalls Is Arrested in the JFK8 Parking Lot

Smalls continued to visit the JFK8 campus between December 2021 and February 2022. (ROA.9862-9869.) Amazon's managers and security team were generally aware of Smalls's presence and did not ask him to leave, though Amazon sent union counsel a third cease-and-desist letter in early February. (ROA. 9862-9869; ROA.5734-5735.) Smalls's most frequent reason for visiting the JFK8

campus was to deliver food to be distributed to employees on behalf of the Union. (ROA.9866; ROA.5064.) Smalls was often accompanied on these visits by reporters or a film crew covering the union campaign. (ROA.9863-9866.)

On February 9, two Amazon managers approached Smalls and asked him to leave Amazon's property by crossing the street to a public bus stop. (ROA.9864; ROA.2404.) Smalls briefly argued with the managers about his right to be present, before voluntarily leaving several minutes later. (ROA.9865; ROA.2404-2407.)

On February 23, Smalls again returned to the JFK8 campus to deliver food accompanied by a film crew. (ROA.9865; ROA.2473-2474.) Two Amazon managers approached Smalls and asked him to leave. (ROA.9866; ROA.2409.) Smalls stated that he was filming an interview and would leave when he was done. (ROA.9866; ROA.2409.) Smalls refused the initial instructions to leave the premises and told the Amazon managers to call the police. (ROA.9866; ROA.2407-2411.) After internal deliberations, Amazon's managers decided to call the police to have Smalls removed. (ROA.9866-9867; ROA.2407-2424.)

Smalls was speaking with a handful of current JFK8 employees, including elected union officer Brett Daniels, when approached by Amazon managers and the responding police. (ROA.9867; ROA.2407-2424.) Smalls again briefly disputed his right to be present, before agreeing to leave and heading toward his vehicle. (ROA.9867; ROA.2407-2424.) Daniels and pro-union employee Joshua Anthony

continued to argue with the police and to protest Smalls's removal. (ROA.9867; ROA.2407-2424.) The police arrested Smalls, Daniels, and Anthony, with all charges later dropped. (ROA.9867; ROA.2407-2424.) News and videos of Smalls's arrest were disseminated throughout the bargaining unit by both the Union and Amazon. (ROA.9688; ROA.4975-4976.)

### C. The Five-Day Election Commences; Board Agents Attempt To Police a No-Electioneering Zone

The five-day election commenced on the morning of March 25 in a tent set up outside the JFK8 building. (ROA.9756; ROA.318-318.) A barricade was set up to keep out media covering the high-profile election, but over the course of the election several reporters crossed into what was delineated a no-electioneering zone. (ROA.9684, ROA.9796-9802, ROA.10036-10037.) Amazon did not diligently police the media presence on its property, despite having agreed to do so prior to the election. (ROA.9796-9804; ROA.541-543, ROA.5515.) At certain points during the election there were long lines of employees waiting to vote. (ROA.9684; ROA.1055.) Amazon had agreed to determine and police release schedules to permit the more than 8,300 eligible voters to vote during work hours. (ROA.9792; ROA.5526-5530, ROA.6966.)

In an attempt to police the no-electioneering zone inside the voting area, Board agents instructed voters to remove or obscure messaging that said anything about the election. (ROA.9820-9827; ROA.4015, ROA.4076.) Board agents

repeatedly instructed voters to obscure "Vote Yes" messages, just as they instructed voters to obscure "Vote No" messages. (ROA.9820-9827; ROA.2881, ROA.2913, ROA.4015, ROA.5031.) Nonetheless, over the course of the five-day election, a number of voters were able to enter or remain in the voting area wearing "Vote No" and "Vote Yes" messages. (ROA.9826-9827; ROA.1644-1645, ROA.5033-5034.) This included a significant number of voters wearing yellow lanyards handed out by the Union over the preceding months that stated "Amazon Labor Union" and "Vote Yes" in small white lettering. (ROA.9826; ROA.2880, ROA.2908, ROA.2517, ROA.2787, ROA.6279.)

### D. Several Heated Arguments Occur on the First Day of the Election

Employee Natalie Monarrez was a former supporter of the union campaign who subsequently became a prominent anti-union voice. (ROA.9685; ROA.3968.) Monarrez voted on the first morning of the election and afterward carried a sign around the JFK8 building that stated, "I joined the ALU, I left the ALU, and I voted no." (ROA.9836; ROA.5045-5051.) Several hours after voting, Monarrez was speaking with another employee in the main breakroom when she observed pro-union employee Joshua Anthony. (ROA.9835-9836; ROA.4098-4099.) Monarrez approached Anthony and attempted to pat him on the back. (ROA.9835-9836; ROA.4098-4099.) Monarrez and Anthony got into a two-sided argument

during which Anthony called Monarrez a "traitor" and Monarrez raised her voice and insulted Anthony before storming out of the room. (ROA.9844; ROA.5051.)

Later in the day on March 25, Monarrez returned to the breakroom with her sign, positioned herself next to a campaign table set up by the Union, and began advocating against the Union. (ROA.9836-9838; ROA.4056-4057, ROA.4110.) Monarrez was asked to move away from the Union's table by employees Angelika Maldonado, Brett Daniels, and Derrick Palmer, who were all elected officers of the Union. (ROA.9841; ROA.4259-4262.) The four employees got into a heated argument during which both sides raised their voices. (ROA.9841; ROA.4269-4270.) Daniels and Palmer left after several minutes, at which point Monarrez and Maldonado continued to argue. During their argument, Maldonado stated she would "kick [Monarrez's] ass in the parking lot," "take [her] outside," or "beat [her] up." (ROA.9841; ROA.4058-4059.) The two argued for several minutes before Maldonado walked away. (ROA.9837; ROA.4065, ROA.4271-4272.)

Monarrez posted the next day on an Amazon employee message board that "ALU reps" had "screamed" at her and that "ALU members" were "bullying" her. (ROA.9838; ROA.5662-5664.)

### E. The Union Wins the Election; Amazon Files Objections

After the conclusion of the five-day election, the tally of ballots showed that the Union won by a vote of 2654 to 2131. (ROA.10025; ROA.6974.) Amazon

filed objections contesting the results and alleging misconduct by both Region 29 and the Union. (ROA.6981-6997.) Since April 2022, Amazon has refused the Union's requests to commence collective bargaining. (ROA.10253; ROA.10183.)

## II. PROCEDURAL HISTORY

Due to Amazon's allegations of misconduct by Region 29, and consistent with agency practice, the representation case was transferred to the Board's Region 28 in Phoenix, Arizona. (ROA.7001.) Upon reviewing Amazon's objections and initial offer of proof, the Regional Director for Region 28 (hereinafter, "the Regional Director") issued an order directing an evidentiary hearing. (ROA.7002-7008.) The Regional Director's order summarized the factual allegations for each objection that, if proven at the hearing, might constitute grounds for setting aside the election. (ROA.7002-7008.) Consistent with agency practice, neutral representatives from other Regions were designated to represent the interests of Region 29 in ensuring an accurate record. The Regional Director, as affirmed by the Board, denied a motion filed by Amazon to bar the representatives for Region 29 from appearing. (ROA.7298-7304, ROA.7591-7592.)

The Hearing Officer conducted the hearing over 24 days between June and July 2021. (ROA.17-5154.) Amazon was permitted to spend most of that time presenting its case and introducing an extraordinary volume of evidence for a post-election hearing. The Hearing Officer nonetheless sustained various evidentiary

challenges raised by the Union—and sometimes joined by the representatives for Region 29—contesting Amazon's attempts to introduce evidence as cumulative, duplicative, unrelated to the objections set for hearing in the Regional Director's order, or otherwise improper. (ROA.9682, ROA.10026-10027.) Rejected exhibits were placed in the record for later review by the Regional Director or the Board, and Amazon was permitted to lodge an offer of proof for any excluded line of questioning. (ROA.9682, ROA.10026-10027.)

On September 1, 2022, the Hearing Officer issued a report examining the objections in detail and recommending that they be overruled. (ROA.9755-ROA.9898.) Amazon filed exceptions with the Regional Director. (ROA.8152-8276, ROA.10358-10472.)

On January 11, 2023, the Regional Director issued a decision affirming the Hearing Officer's analysis in substantial part, overruling Amazon's objections in their entirety, and certifying the Union as the majority representative of the JFK8 unit. (ROA.10025-10063.) For allegations Amazon claimed the Hearing Officer had improperly refused to consider, the Regional Director explained in detail why Amazon had failed to establish objectionable conduct. (ROA.10025-10063.) Amazon filed a request for review with the Board. (ROA.8405-8518.)

On August 29, 2024, the Board (Chairman McFerran and Member Prouty; Member Kaplan, dissenting) issued an order, reported at 373 NLRB No. 92,

denying Amazon's request for review. (ROA.9682-9694.) The Board agreed with the Regional Director's findings and analysis, as modified or elaborated upon in certain respects, and found no grounds for invalidating the election or setting aside the Regional Director's certification of the Union. (ROA.9682-9688.) Member Kaplan dissented and would have granted review. (ROA.9689-9694.)

## III. THE BOARD'S CONCLUSIONS AND ORDER

On April 1, 2026, the Board (Chairman Murphy, Members Prouty and Mayer) issued a Decision and Order granting summary judgment and finding that Amazon violated Section 8(a)(5) and (1) of the Act, 29 U.S.C. § 158(a)(5), (1), by refusing to recognize and bargain with the Union despite the certification of the Union in the underlying representation proceeding. (ROA.10252-10254.)

The Board's Order requires Amazon to cease and desist from the unfair labor practice found and from, in any like or related manner, interfering with, restraining, or coercing employees in the exercise of their rights under the Act. (ROA.10255.) The Board's Order further requires Amazon to bargain with the Union, on request, and to post a remedial notice. (ROA.10255.) The Board, with Member Prouty dissenting, declined to order additional remedies. (ROA.10254 n.6.)

## SUMMARY OF ARGUMENT

Although Amazon seeks to overcomplicate matters in defense of its admitted refusal to recognize and bargain with the Union, this is ultimately a straightforward

case turning on the Board's reasonable decision not to throw out the results of a highly scrutinized and carefully administered secret-ballot election that the Union won by more than 520 votes. Congress entrusted the Board with an unusually high degree of discretion in supervising union-representation elections, and Amazon has failed to show any aspect of the representation proceeding that was in error or that would justify the extraordinary remedy of overruling the clearly expressed will of its employees. Instead, Amazon's brief is largely premised on mischaracterizations of the Board's analysis, or on distortions of the underlying record evidence.

Amazon first fails to show that the Board acted unreasonably in rejecting Amazon's objections to the conduct of the election. The Court applies a highly deferential standard of review in election-objection cases and asks only whether the Board's analysis was at least reasonable. That standard is easily met here. For each of the four election objections Amazon renews on appeal, the Board carefully considered the likely impact on the election:

1. Amazon argues the Board applied the wrong legal standard to an objection based on the arrest of Union President Chris Smalls for trespassing in the parking lot outside the JFK8 building, but Amazon's argument is premised on a misconstruction of the law that is contrary to Amazon's own position below. The Board reasonably found that there was nothing coercive about Smalls's actions.

2. Amazon argues the Board did not consider all of the circumstances surrounding inappropriate, threatening remarks made during an argument between an anti-union employee and union-agent Angelika Maldonado, but Amazon fails to rebut the Board's straightforward finding that there is insufficient evidence any employees heard about such remarks prior to voting. The Board reasonably weighed the totality of the circumstances, including the lack of dissemination.

3. Amazon argues the Board misapplied the context-specific legal standard applicable to objections that an election started late, but Amazon does not address its own failure to properly file such an objection, and misconstrues the Board's faithful application of the appropriate standard.

4. Amazon argues the Board failed to apply the legal standard applicable to objections based on biased Board-agent misconduct, but disregards the express invocation of such standard in the decisions below. The Board affirmed that no biased or improper Board-agent conduct actually occurred.

Amazon fares no better in arguing that the Board, despite explicitly rejecting Amazon's objections both individually and cumulatively, failed to properly consider the cumulative impact of the various objections. The Board and the Regional Director reasonably explained that, while some infractions by union agents and imperfections in the election process did occur, the impact on the election of each such incident was minimal to nonexistent. The Board correctly

focused on the validity of the election. Amazon's suggestion that the Board needed to format its written decision to address each objection twice lacks any merit.

Amazon also fails to show that it was denied due process at the post-election evidentiary hearing. The Regional Director and the Hearing Officer permitted Amazon to introduce an extraordinary volume of documentary and testimonial evidence and to fully litigate its objections. The Regional Director and then the Board fully considered every aspect of Amazon's arguments, including the rejected exhibits and offers of proof Amazon was permitted to enter into the record. The participation of representatives for Region 29, in line with established practice, did not affect Amazon's case. As a result, Amazon cannot show it was prejudiced by any of the routine evidentiary and procedural rulings it contests on appeal, and the Court may easily dispose of Amazon's last-ditch procedural challenges.

The Union's petition is also meritless. The Act accords the Board an equally high degree of discretion in determining the remedial actions necessary to address a respondent's unfair labor practices. The Board's decision not to order additional, non-standard remedies for Amazon's unlawful refusal to bargain was well within the bounds of its discretion. The Union's contrary arguments are premised on factual allegations not before the Board in this case and not at issue on appeal.

## STANDARD OF REVIEW

Judicial review of the Board's decisions is "limited and deferential." *In-N-Out Burger, Inc. v. NLRB*, 894 F.3d 707, 714 (5th Cir. 2018). That deference is heightened in cases such as this one, involving review of a Board representation-case decision, because "Congress has entrusted the Board with wide discretion in determining whether an election has been conducted fairly." *Boston Insulated Wire & Cable Sys. v. NLRB*, 703 F.2d 876, 880 (5th Cir. 1983). The Court accords "special respect" to the Board's representation-case decisions. *Id.* The Court's review of such decisions "is limited to determining whether the Board has reasonably exercised its discretion," and such decisions will be upheld as long as they are "reasonable and based upon substantial evidence in the record considered as a whole." *Con-way Freight, Inc. v. NLRB*, 838 F.3d 534, 537 (5th Cir. 2016).

The Court will uphold the Board's findings of fact if they are supported by "substantial evidence." *In-N-Out*, 894 F.3d at 714. Substantial evidence means that which is "sufficient for a reasonable mind to accept as adequate to support a conclusion." *ExxonMobil Rsch. & Eng'g Co.*, 132 F.4th 337, 345 (5th Cir. 2025). The Court will not "'displace the Board's choice between two fairly conflicting views' of the evidence," even if the Court would "justifiably [have made] a different choice had the matter been before it de novo." *Id.*

The Court reviews the Board's procedural and evidentiary rulings for an abuse of discretion. *ExxonMobil*, 132 F.4th at 344-45; *UNF W., Inc. v. NLRB*, 844 F.3d 451, 457, 464 (5th Cir. 2016). The Court affords even greater deference to the Board's choice of remedies. *UNF W.*, 844 F.3d at 463.

## ARGUMENT

### I. The Board Reasonably Rejected Amazon's Election Objections and Determined That Such Objections, Considered Both Individually and Cumulatively, Did Not Warrant Invalidating the Election

An employer commits an unfair labor practice in violation of Section 8(a)(5) and (1) of the Act, 29 U.S.C. § 158(a)(5), (1), by refusing to bargain with a union designated by a majority of its employees, including by refusing to accept the results of an election later certified by the Board. *NLRB v. Laney & Duke Storage Warehouse*, 369 F.2d 859, 869 (5th Cir. 1966). Amazon does not contest that it has refused to recognize and bargain with the Union. Instead, this case primarily turns on a dispute over the validity of the decision to certify the results of the March 2022 election, which the Union decisively won by more than 520 votes.

In light of the unusually large degree of discretion granted to the Board in determining questions of representation under the Act, a Board decision certifying the results of an election "warrants considerable respect from reviewing courts." *NLRB v. Hood Furniture Mfg.*, 941 F.2d 325, 328 (5th Cir. 1991). There is a "strong presumption" that the ballots cast in a Board-supervised election "reflect

the true desires of the employees." *Id.*; *Exela Enter. Sols. v. NLRB*, 32 F.4th 436, 446 (5th Cir. 2022). A party seeking to overturn a Board-supervised election accordingly bears a "heavy burden." *Con-way*, 838 F.3d at 537.

Although the Board endeavors to maintain "laboratory conditions" in elections, it is settled law that the Board does not apply "unrealistic standards which insist on improbable purity of word and deed on the part of the parties or Board agents." *Hudson Oxygen Therapy, Inc.*, 268 NLRB 1374, 1376 (1984), *enforced*, 764 F.2d 729 (9th Cir. 1985); *accord Con-way*, 838 F.3d at 540; *NLRB v. Klingler Elec. Corp.*, 656 F.2d 76, 89 (5th Cir. 1981). An objecting party must show not merely that improprieties occurred, but that they "interfered with the employees' exercise of free choice to such an extent that they materially affected the results of the election." *Hood Furniture*, 941 F.2d at 328.

On appeal, Amazon narrows its argument to just four of the objections that it raised below, as well as the new claim that the Board committed legal error by purportedly failing to consider the cumulative impact of the objections as a whole. (Amazon-Br.37-68.) As shown below, none of these arguments has any merit. And because Amazon has presented no meaningful argumentation rebutting the Board's detailed analysis of the other objections raised below, Amazon has waived any challenge to the findings made with respect to those objections. *Flex Frac*

*Logistics LLC v. NLRB*, 746 F.3d 205, 208 (5th Cir. 2014) ("An appellant abandons all issues not raised and argued in its *initial* brief on appeal.").

Amazon failed to carry its burden of proving objectionable conduct to the Board, and it has failed again on appeal to show that the Board's decision was not at least "reasonable" and within the bounds of the discretion granted to the agency by Congress. *Hood Furniture*, 941 F.2d at 328.

### A. Prospective Voters Would Not Have Been Coerced by the Union President's Unsanctioned Visits to the JFK8 Parking Lot

In Objection 16, Amazon alleged that Chris Smalls, as president and stipulated agent of the Union, "repeatedly trespassed on Amazon's property" in the months preceding the election. (ROA.10053-10054.) As the Board explained, and as was undisputed below, allegations of union-agent trespass are evaluated under the ordinary standard for party-agent misconduct. (ROA.9687.) That standard asks whether, considering the totality of the circumstances, party agents' actions would have "reasonably tended to interfere with the employees' free and uncoerced choice in the election." *Edward J. DeBartolo Corp.*, 313 NLRB 382, 382-83 (1993) (quoting *Baja's Place, Inc.*, 268 NLRB 868, 868 (1984)); *see Avis Rent-A-Car Sys.*, 280 NLRB 580, 581 (1986) (outlining nonexhaustive list of relevant factors). Accordingly, Smalls's alleged trespass in this case must be evaluated from the perspective of its tendency to coerce prospective voters in the scheduled

election, and not from the perspective of Amazon or Amazon's legitimate property rights. *DeBartolo Corp.*, 313 NLRB at 382-83.

It is undisputed that Smalls was no longer employed by Amazon at the time he made numerous unsanctioned visits to the parking lot and sidewalks outside the JFK8 building, within the boundaries of property leased by Amazon. (ROA.9862-9869.) Smalls often visited to deliver food to be distributed to employees on behalf of the Union. Smalls would wait in the parking lot while pro-union JFK8 employees took the food inside. (ROA.9866.) On two occasions, Smalls was asked to leave the premises by Amazon's managers. Smalls calmy disputed his right to be present on both occasions. (ROA.9864-9867.) On the second such occasion, after Smalls initially refused to leave, Amazon called the police to have him removed, culminating in the highly publicized arrest of Smalls and two current JFK8 employees who attempted to intervene on his behalf. (ROA.9867.)

Applying the multifactor standard for party-agent misconduct, the Board and the Regional Director reasonably concluded that nothing about Smalls's arrest or his unsanctioned visits to the JFK8 campus would have tended to interfere with employee free choice in the election. (ROA.9687-9688, ROA.10055.) As the Board highlighted: Smalls did not enter the JFK8 building but remained on the periphery of Amazon's property in areas generally open to non-employees; he did not engage in violent or destructive conduct, but calmly disputed his right to be

present on the only two occasions he was approached by Amazon's managers and asked to leave; and he was already in the process of leaving when he was arrested at Amazon's behest. (ROA.9687.) Although Smalls testified that he returned to the JFK8 campus "a couple of times" after his arrest (ROA.4620-4621), Amazon does not allege that Smalls remained as frequent of a presence after his arrest or in the entire month preceding the election. (ROA.9869.)[2]

Amazon does not contest and has waived any response to the bulk of the Board's analysis. Amazon instead advances the narrow argument on appeal that the Board erroneously failed to apply a distinct legal standard purportedly set forth in *Phillips Chrysler Plymouth, Inc.*, 304 NLRB 16 (1991). (Amazon-Br.51-55.)

Amazon's argument is premised on a mischaracterization of the law. Contrary to Amazon, *Phillips* does not represent an "announced standard" in which the Board adopted "a single 'powerlessness' inquiry for claims of union trespass." (Amazon-Br.51). Rather, as the Board's decision in *Phillips* itself makes clear, *Phillips* was merely a case-specific application of the traditional standard for party-agent misconduct. 304 NLRB at 16. The Board in *Phillips* framed its inquiry as

---

[2] The Regional Director correctly dismissed Amazon's further claim, abandoned below and not renewed on appeal, that the Union unfairly "misrepresented" the facts surrounding Smalls's arrest. (ROA.10054.) It is settled law that the Board will not evaluate the accuracy of parties' campaign messaging, except in narrow circumstances not alleged here. *Midland Nat'l Life Ins.*, 263 NLRB 127, 129-33 (1982); *accord Trencor, Inc. v. NLRB*, 110 F.3d 268, 276 (5th Cir. 1997).

applying the traditional standard, asking whether the trespass incident at issue "reasonably tended to interfere with the employees' free and uncoerced choice in the election." *Id.* (quoting *Baja's Place*, 268 NLRB at 868). The Board expressly considered numerous factors as part of its analysis in that case, including: the narrow margin of the election; the belligerent "shouting match" that ensued in proximity to the entire workforce; the timing of the incident just before the start of voting; and the fact that the union agents did not leave, but remained on the premises even after police were called. *Id.*

In subsequent cases involving union-agent trespass, the Board and courts have distinguished the facts of *Phillips* while continuing to apply the traditional multifactor standard for party-agent misconduct. *See, e.g.*, *Fam. Serv. Agency S.F. v. NLRB*, 163 F.3d 1369, 1383 (D.C. Cir. 1999) (affirming Board decision distinguishing *Phillips* where trespass occurred weeks prior to election); *NLRB v. Earle Indus.*, 999 F.2d 1268, 1273-74 (8th Cir. 1993) (affirming Board decision distinguishing *Phillips* where trespass occurred weeks prior to election, there was no shouting match, and election was not decided by single vote). Despite union-agent trespass being a "recurring" category of election misconduct (Amazon-Br.52), Amazon is unable to identify any case from the intervening 35 years treating *Phillips* as having set forth a distinct legal standard, or any application of a singular "powerlessness inquiry" (Amazon-Br.32) to invalidate an election.

Indeed, in overt contradiction of its argument on appeal, Amazon argued to the Board that Smalls's actions and union-agent trespass must be evaluated under the traditional multifactor standard for party-agent misconduct. (ROA.10147-10149.) Accordingly, pursuant to Section 10(e) of the Act, it is doubtful the Court is even empowered to entertain Amazon's new claim of legal error or its assertion that the Board was required to apply "a single 'powerlessness' inquiry." (Amazon-Br.51). *See* 29 U.S.C. § 160(e); *Hallmark Phoenix 3, LLC v. NLRB*, 820 F.3d 696, 709 (5th Cir. 2016) ("[U]nder Section 10(e) of [the Act], a court of appeals 'lacks jurisdiction to review objections that were not urged before the Board.'").

Moreover, even under the terms of Amazon's own proposed legal standard, substantial evidence supports the Board's conclusion that the conduct at issue here did not convey to employees that Amazon was "powerless" to enforce its property rights. (ROA.9687-9688.) Setting aside the facial implausibility of employees perceiving a corporation like Amazon as powerless in the face of several minor incidents of trespass in the parking lot outside its facility, the Board noted that on each of the two occasions that Amazon publicly signaled it did not want Smalls on its property, he left or was removed within a matter of minutes. (ROA.9687.) Although Smalls repeatedly visited the JFK8 campus between December and February, on all but two of those occasions Amazon's agents chose not to ask him to leave. There is insufficient evidence that most employees would have been

aware of the cease-and-desist letters Amazon sent to the Union—even assuming those letters would have been understood as prohibiting Smalls's later visits, and even assuming employees would not have viewed them as having been superseded by Amazon's apparent indifference to Small's later visits.[3]

As the Board observed, it may well be that some employees sympathized with Smalls and that publicizing Amazon's decision to have him arrested alongside two JFK8 employees benefited the union campaign. (ROA.9688.) But that does not mean that hundreds of employees were coerced out of fear or intimidation into suppressing their true preferences in the secret-ballot election—which is what Amazon was required to show to justify invalidating the results. (ROA.9688.)

### B. Amazon Failed to Show That Any Pending Voters Were Aware of Inappropriate Remarks Made Toward an Individual Employee

In Objection 13, Amazon alleged that, on the first day of voting, agents of the Union threatened and harassed employee Natalie Monarrez for opposing the union campaign. (ROA.9685.) Like union-agent trespass and other forms of party-agent misconduct, threats and harassment by party agents are evaluated under the same multifactor standard that asks whether the conduct in question

---

[3] Smalls posted an excerpt of one of these letters on social media in December—months prior to his arrest and outside the critical pre-election period—and argued, whether rightly or wrongly, that his visits did not constitute unlawful trespass. (ROA.9687 n.33; ROA.5733.) Amazon did not publicly articulate its own views.

would have reasonably tended to interfere with employees' free and uncoerced choice in the election. *Avis Rent-A-Car*, 280 NLRB at 581-83.

Monarrez was a prominent anti-union advocate who had initially supported the Union. (ROA.9685.) Several hours after casting her ballot on March 25—and having already provoked an argument with a different pro-union employee earlier in the day, *infra* pp. 28-31—Monarrez entered the main breakroom holding a sign that stated, "I joined the ALU, I left the ALU, and I voted no." (ROA.9836-9838.) Monarrez positioned herself next to a campaign table set up by the Union and began advocating against the Union. (ROA. 9836-9838.) At a certain point, Monarrez was asked to move away from the Union's table by employees Angelika Maldonado, Brett Daniels, and Derrick Palmer, who were stipulated agents of the Union. Monarrez and the union agents got into a heated argument during which all four employees raised their voices. (ROA.9841.) After Daniels and Palmer left, Monarrez and Maldonado continued to argue, and Maldonado variously stated that she would "kick [Monarrez's] ass in the parking lot," "take [her] outside," or "beat [her] up." (ROA.9841.)

The Board made clear that it does not condone the type of threatening remarks made by Maldonado toward Monarrez. (ROA.9686 n.27.) But the Board reasonably found that it is unlikely the incident in question would have meaningfully influenced employee choice in the election. (ROA.9686.) As the

Board and the Regional Director observed, Monarrez had already cast her ballot hours earlier, and there is virtually no evidence that Maldonado's remarks were disseminated to other employees or that they would have had "[any] impact on the remainder of the electorate who had not yet voted." (ROA.9686, ROA.10050.)

Notwithstanding Amazon's unsupported assertions that "many" employees witnessed the argument between Monarrez and the union agents (Amazon-Br.60-61), and that the breakroom was "full" of employees (Amazon-Br.3), Monarrez's testimony did not indicate that more than a handful of unknown individuals were present (ROA.4062).[4] Amazon did not question Monarrez about the number of employees in the breakroom and did not offer any testimony that other employees heard about Maldonado's remarks to Monarrez—despite introducing or attempting to introduce extensive cumulative evidence that employees heard about Smalls's arrest, *infra*, pp. 51-52. And while Monarrez made a series of posts on an Amazon message board the following day—which made clear Monarrez's own partisan views and strong feelings about the election—Monarrez merely stated in those posts that unspecified "ALU reps" had "screamed" at her, and that unspecified "ALU members" were "bullying" her. (ROA.9686; ROA.5662-5664.) There was no reference to a threat of violence. Nor is there any evidence as to how many

---

[4] Notably, despite introducing an extraordinary number of other video exhibits at the hearing, Amazon chose not to submit CCTV footage of this incident.

employees would have viewed Monarrez's posts. (ROA.9686.) In short, there is no confirmation that a single employee who had not yet cast their ballot witnessed or was made aware of Maldonado's inappropriate remarks toward Monarrez.

Amazon resists the Board's straightforward analysis by insisting the Board "change[d]" the standard for party-agent misconduct (Amazon-Br.63), and by distorting the facts (Amazon-Br.61). Amazon's arguments are baseless.

**First**, Amazon's argument is premised on a mischaracterization of the Board's analysis of Maldonado's misconduct. Far from treating dissemination as "dispositive" (Amazon-Br.61), the Board emphasized that the standard for party-agent misconduct remains multifaceted and requires a consideration of "the totality of the circumstances" (ROA.9686). The Board and the Regional Director expressly applied the normal multifactor standard for party-agent misconduct. (ROA.9685-9686 & n.27, ROA.10046.) A lack of dissemination may reasonably be deemed a decisive factor in some cases—particularly if the election was not close—given the overarching focus on the impact on employee choice. Insofar as Amazon implies the standard for evaluating threats does not permit the Board to consider the extent of those threats' dissemination, Amazon is plainly mistaken. *Werthan Packaging*, 345 NLRB 343, 345 (2005) (relying on lack of dissemination of threatened job loss); *accord Hood Furniture*, 941 F.2d at 329 (affirming Board's

reliance on lack of evidence of dissemination of physical threat); *NLRB v. White Knight Mfg.*, 474 F.2d 1064, 1067-68 (5th Cir. 1973) (same).

**Second**, Amazon conflates the incident involving Monarrez and Maldonado with a separate incident earlier in the day involving Monarrez and pro-union employee Jason Anthony, who was not an agent of the Union. (Amazon-Br.47, 59-64.) Thus, Amazon asserts that "agents" of the Union "repeatedly" harassed Monarrez across multiple incidents on March 25, misleadingly giving Anthony the title of "ALU Organizer." (Amazon-Br.47, 60.) But Amazon does not address and has waived any response to the Board's and the Regional Director's finding that Anthony was not an agent of the Union. (ROA.9686 n.25, ROA.10047-10048.) *Flex Frac*, 746 F.3d at 208. Although Anthony was a prominent and enthusiastic supporter of the union campaign—who created and administered a pro-union Facebook page on his own initiative, and who later served as a volunteer election observer for one day—Amazon failed to carry its burden of proving that the Union imparted actual or implied authority to him. (ROA.10048.) *Con-way*, 838 F.3d at 538 (discussing "stringent" test for determining agency status).

Amazon also repeats Monarrez's claim that Anthony cursed at her and approached her threateningly. (Amazon-Br.47, 60, 64.) But the Hearing Officer did not credit this specific portion of Monarrez's self-serving, combative testimony, which was contradicted by the accounts of the incident offered by Anthony and

employee Cassio Mendoza. (ROA.9773, ROA.9835-98, ROA.9843-9844.) As Mendoza more credibly testified, Monarrez and Anthony got into a two-sided argument during which Anthony called Monarrez a "traitor" and Monarrez raised her voice and insulted Anthony before storming out of the room. (ROA.9844; ROA.5051.) Monarrez continued to lob personal attacks against Anthony months later at the evidentiary hearing. (ROA.9844; ROA.4025.) Amazon has waived any challenge to the Board's credibility determinations, which, in any event, this Court will not disturb "except in very rare instances." *UNF W.*, 844 F.3d at 464 n.9.

Nor does Amazon acknowledge or contest the Board's determination that, because Anthony was not acting as an agent of the Union, the incident involving Monarrez and Anthony must be evaluated under the heightened standard for third-party misconduct. (ROA.9686 n.25, ROA.9844.) *Westwood Horizons Hotel*, 270 NLRB 802, 803 (1984). Amazon has never alleged that standard was met.

Perhaps for the foregoing reasons, Amazon abandoned its reliance on the argument between Monarrez and Anthony in its briefing to the Board and to the Regional Director. Amazon only referenced such incident in passing when quoting the Hearing Officer's report as evidence for a separate claim that the Hearing Officer had improperly factored subjective employee reactions into her analysis.

(ROA.10145-10154, ROA.10439-10443.)[5] Parties have an obligation to preserve specific arguments in filings with the Regional Director and the Board. 29 C.F.R. §§ 102.67(e), 102.69(c)(1)(iii). As such, it is doubtful the Court is empowered to consider Amazon's attempt on appeal to revive any claim regarding the separate incident involving Monarrez and Anthony. 29 U.S.C. § 160(e); *Creative Vision Res. LLC v. NLRB*, 882 F.3d 510, 528 (5th Cir. 2018) (holding that Section 10(e) bars objections not preserved in compliance with Board rules).

Nonetheless, substantial evidence fully supports the Board's finding that the argument between Monarrez and Anthony did not rise to the level of objectionable conduct impacting the election. (ROA.9686 n.25, ROA.9844.) Monarrez had already voted by the time of her argument with Anthony, there is minimal evidence of dissemination, and the Hearing Officer did not find that any threat or targeted harassment actually occurred. (ROA.9843-9844.) Indeed, Monarrez admitted that *she* initiated the interaction with Anthony, who was attempting to ignore her, by approaching him and attempting to pat him on the back. (ROA.4098-4099.) *Cf. NLRB v. McCarty Farms, Inc.*, 24 F.3d 725, 727-29 (5th Cir. 1994) (remanding for evidentiary hearing where union supporter sought out and threatened violence

[5] Amazon continues to insist that the Board relied on "the absence of proven voter reactions" (Amazon-Br.62), despite the Board and the Regional Director disclaiming any such analysis (ROA.9685-9686, ROA.10046-10047).

toward employee waiting in line to vote, there was evidence of widespread dissemination, and the election was decided by as few as 3 votes).

While not to be condoned, the fact that arguments occurred and tempers ran high between a handful of individuals in a unit of more than 8,300 employees does not mean there are grounds for setting aside the election. *See Nabisco, Inc. v. NLRB*, 738 F.2d 955, 957 (8th Cir. 1984) ("A certain measure of bad feeling and even hostile behavior is probably inevitable in any hotly contested election."); *Klingler Elec.*, 656 F.2d at 87 (affirming dismissal of objection based on heated argument between two employees, given lack of evidence of impact on election).

### C. It Is Not Possible That Hundreds of Employees Were Prevented from Voting During an Alleged Brief Delay in Opening the Polls

In Objection 6, Amazon alleged that Region 29 failed to provide an adequate number of voting booths and Board agents to oversee the election, resulting in "long lines" that discouraged employees from voting. (ROA.10032-10035.) Allegations that Board agents failed to protect the integrity of an election are evaluated under a well-settled standard that asks whether the Board agents' conduct "raises a reasonable doubt as to the fairness and validity of the election." *Polymers, Inc.*, 174 NLRB 282, 282 (1969), *enforced*, 414 F.2d 999 (2d Cir. 1969).

Amazon changed tack at the evidentiary hearing and attempted to introduce evidence that there was also a 5-to-12-minute delay to the opening of the polls on March 25. The Board applies a separate, context-specific standard to claims that

the polls failed to open at the announced start time. It is well established that "the failure of a poll to open precisely at the scheduled time … does not by itself require that the election be set aside." *Colgate Scaffolding & Equip. Corp.*, 354 NLRB 544, 544 (2009). Rather, the Board examines whether "the number of employees possibly disenfranchised thereby is sufficient to affect the election outcome." *Pea Ridge Iron Ore Co.*, 335 NLRB 161, 161 (2001) (citing *Wolverine Dispatch*, 321 NLRB 796, 796-97 (1996)). The Board considers whether there is objective evidence that a determinative number of employees were "possibly" prevented from voting by the late start, not whether there is after-the-fact testimony that employees were "actually" disenfranchised. *Pea Ridge*, 335 NLRB at 161.

Election-integrity objections and late-start objections are two distinct, well-defined categories of post-election objections. (ROA.10035.) Accordingly, the Hearing Officer sustained evidentiary challenges raised by the Union to Amazon's attempts to elicit testimony that the election started 5 to 12 minutes late on March 25. (ROA.605-614, ROA.675-677, ROA.1356-1358.) Without acknowledging this procedural history, Amazon now contends that the Board erroneously failed to apply the *Pea Ridge* standard. (Amazon-Br.55-59.) Amazon's argument is again premised on mischaracterizing the Board's and the Regional Director's analysis.

**First**, as the Regional Director explained, and as Amazon does not dispute in its brief, Amazon did not actually file a late-start objection alleging a determinative

number of employees who were prevented from voting or invoking the *Pea Ridge* standard for such claims. (ROA.10032-10035.) Instead, Amazon alleged in Objection 6 that Region 29 had engaged in objectionable Board-agent misconduct by more generally failing "to protect the integrity of [the election]" through the provision of inadequate staffing and equipment, which Amazon alleged resulted in "long lines" at points during the election. (ROA.9783 n.11, ROA.10032-10035.) Amazon does not contest the Board's and the Regional Director's application of the *Polymers* standard to reject these latter allegations—which were particularly weak here given that Amazon was notified weeks in advance of Region 29's plan to use three primary voting booths and given that there is no evidence employees who wanted to vote were turned away or prevented from doing so. (ROA.9684, ROA.9791; ROA.2121, ROA.2223, ROA.5509-5510, ROA.5523.)

**Second**, in rejecting Amazon's distinct procedural argument that the Hearing Officer nonetheless erred in excluding evidence of a 5-to-12-minute delay on the first morning of the election, the Board and the Regional Director reasonably found that no prejudice was established even under the standard for late-start objections. (ROA.9684 n.11, ROA.10035 & n.19.) In doing so, the Board plainly set forth and examined the correct legal standard, noting, in agreement with Amazon, that "the relevant inquiry is whether a determinative number of voters *could have possibly* voted during the time when the polls were supposed to be open." (ROA.9684 n.11

(emphasis added).) The Board cited *Wolverine Dispatch*, 321 NLRB at 796-97, an earlier iteration of the same standard applied in *Pea Ridge* and cited by Amazon. *See Pea Ridge*, 335 NLRB at 161 (citing *Wolverine Dispatch*). The Board then reasonably concluded—as is indisputable—that it is not possible that more than 520 employees could have cast their votes during the 5-12 minutes the polls were alleged to have remained closed after the scheduled start time on the first morning of the five-day election. (ROA.9684 n.11.) Amazon's central claim that the Board "applied a forbidden probability analysis" (Amazon-Br.55) is therefore false.

To the extent Amazon is now arguing that an "objective" analysis requires an election to be set aside when there is *any* delay to the start of an election (Amazon-Br.56-58), that is contrary to both reason and precedent. *Colgate Scaffolding*, 354 NLRB at 544. The purpose of the *Pea Ridge* standard is not to forbid logic or common sense, but to avoid having to rely on subjective, after-the-fact testimony about individual employees' reasons for not voting. 335 NLRB at 161. In *Pea Ridge*, for example, the Board declined to consider an employee's subjective testimony about his reasons for not voting and instead focused on whether he was "possibly" disenfranchised by the late start. *Id.* Likewise, in *Wolverine Dispatch*, the Board rejected a hearing officer's reliance on the lack of affirmative evidence that employees attempted to vote during an unannounced closure of the polls. 321 NLRB at 797; *see Bronx Lobster Place LLC*, Board Case No. 02-RC-191753,

2018 WL 721396, at *1 (Feb. 2, 2018) (similar). The Board may still find, based on objective considerations, that it is not possible a determinative number of voters could have been disenfranchised. *E.g.*, *Colgate Scaffolding*, 354 NLRB at 544; *Extendicare Health Servs., Inc.*, 347 NLRB 544, 545 (2006).

The Board's unreported, non-precedential order in *Refresco Beverages US, Inc.*, Board Case No. 22-RC-276628, 2022 WL 1046078 (Apr. 5, 2022), cited by Amazon (Amazon-Br.56-58), is not to the contrary. That case involved a routine application of the *Pea Ridge* standard to find that a 5-minute delay in opening the polls was potentially determinative where the election was decided by only a 13-vote margin. 2022 WL 1046078, at *1. The Board faulted the Regional Director for relying on his conclusion that it appeared unlikely that a sufficient number of employees attempted to vote during the delay. *Id.* Here, by contrast, the Board emphasized that it is not *possible* that more than 520 employees could have been disenfranchised during the 5-12 minutes the polls are alleged to have been closed. (ROA.9684 n.11.) Moreover, unreported orders like the one in *Refresco* do not constitute Board precedent. *Prof'l Transp., Inc.*, 370 NLRB No. 132, 2021 WL 2658293, at *4 n.11 (June 9, 2021); *see also* 29 C.F.R. § 102.67(d)(1)(ii) (limiting Board review to departures from "officially reported Board precedent").

Amazon's footnoted contention that the Board failed to take into account an additional 5-to-6-minute period of "delay" on the first day of the election

(Amazon-Br.58 n.13) is inaccurate and misleading. Board agents did not "stop[] the election" during the brief period in question (Amazon-Br.58 n.13), but merely reconfigured the queue of employees waiting to vote into three lines to increase efficiency (ROA.9787 & n.13). All employees waiting to vote remained in line and subsequently cast their ballots. (ROA.9787 & n.13, ROA.10035 & n.18; ROA.615-619, ROA.636-638.) Because this was not an unannounced closure of the polls, the Board's *Pea Ridge* standard is inapposite.

In sum, while Amazon has waived any response to the finding that a late-start objection was not properly filed in this case, the Board also reasonably found that, even if one had been filed, no prejudice resulted from the Hearing Officer's exclusion of evidence of a brief delay. (ROA.9684 n.11.)

### D. Board Agents Did Not Disparately Enforce a No-Electioneering Rule Inside the Voting Area

In Objection 10, Amazon alleged that Region 29 engaged in Board-agent misconduct by purportedly directing voters to cover up "Vote No" messages in the voting area while permitting voters to wear "Vote Yes" messages and other pro-union paraphernalia. (ROA.10041.) As Amazon's own objections acknowledged (ROA.10041), it is not considered objectionable conduct or prejudicial to either side if employees wear pro-union or anti-union paraphernalia in the voting area. *U-Haul Co. of Nevada*, 341 NLRB 195, 196 (2004). Nonetheless, Regions often endeavor to extend the no-electioneering zone inside the voting area to include

campaign messaging worn by voters, *see id.*, as Region 29 did here. In alleging grounds for overturning the election, Amazon invokes the standard for Board-agent misconduct set forth in *Athbro Precision Engineering Corp.*, 166 NLRB 966 (1967), which asks whether Board agents' openly biased or partisan actions tended to "destroy confidence in the Board's election process," or could reasonably be construed as "impugning [the Board's] election standards." *Id.* at 966.

In renewing this objection on appeal, Amazon disregards the substantive analysis in the decisions below and ignores the evidence contradicting its own version of events. (Amazon-Br.64-68.)

**First**, Amazon's assertion that the Board "failed entirely to apply its *Athbro* standard" (Amazon-Br.33, 67) disregards the straightforward analysis below. The Hearing Officer explicitly observed that *Athbro* is the standard applicable to allegations, including in Objection 10, that Board agents engaged in misconduct "purportedly favoring one party." (ROA.9759-9760.) The Hearing Officer then examined the record in detail and found no basis for concluding that Board agents favored one party over another, while addressing and distinguishing the same precedent relied upon by Amazon. (ROA.9826-9827 (distinguishing *Glacier Packing Co.*, 210 NLRB 571 (1974).) The Regional Director affirmed the Hearing Officer's analysis, and, reiterating the *Athbro* standard, concluded that "[i]t would be unreasonable to construe the Board agents' conduct as reflecting a preference or

choice for one party or the other." (ROA.10042.) The Board adopted the Regional Director's analysis and also reaffirmed, for a third time, that the *Athbro* standard applies to allegations that Board-agent conduct conveyed "that the Board is biased in favor of … one of the parties." (ROA.9682-9683 & n.1.)

**Second**, Amazon mischaracterizes the facts and the record evidence. As the Hearing Officer exhaustively detailed, "the record evidence does *not* generally establish that Board agents treated 'Vote No' items less favorably than 'Vote Yes' items." (ROA.9820-9827.) To the contrary, the evidence shows that Board agents evenhandedly attempted to police a no-electioneering zone inside the voting tent by instructing supporters of both sides to remove or obscure visible items "that said anything about the election." (ROA.9826; ROA.4015, ROA.4076.) Thus, voters were repeatedly instructed to remove or obscure "Vote Yes" messages (ROA.2881, ROA.2913, ROA.4015, ROA.5031), just as voters were instructed to remove or obscure "Vote No" messages (ROA.4015). While some observers wore pro-union buttons that did not reference the election, this was entirely consistent with the Board agents' instructions to obscure election-related messaging. (ROA.9827.)

The Hearing Officer fully acknowledged that, despite the Board agents' efforts, some employees wore election-related messaging inside the voting tent. (ROA.9826-9827.) It is not surprising in an election of this size that some voters wearing campaign messaging would escape Board agents' attention. The record

shows that this included employees wearing both "Vote Yes" and "Vote No" messaging. (ROA.1644-1645, ROA.5033-5034.)

Amazon's assertion that the Board agents "permitted hundreds of voters wearing … 'Vote Yes' lanyards to enter and remain in the voting tent" (Amazon-Br.22, 66) is misleading. An employee who served as one of Amazon's election observers, Charlene Novoa, testified that on March 28 she saw "many" voters wearing yellow lanyards, which she associated with the Union. (ROA.9822-9823; ROA.2874.) Novoa stated numerous times that she could not recall the number of voters she saw wearing such lanyards (ROA.2874, ROA.2880, ROA.2884), but after repeated questioning estimated that "maybe 45 percent" of the "maybe 200 people" she saw vote on the first day of the election wore them. (ROA.2874.) None of Amazon's other witnesses testified to having seen such a large percentage of voters wearing union lanyards. (ROA.9820-9825.)

The Hearing Officer did not specifically credit Novoa's suggestion that such a large percentage of voters wore union lanyards in the voting area (ROA.9773), but it is undisputed that an unknown number of voters did (ROA.9826). As the Hearing Officer observed, however—and regardless of the exact number of voters wearing union lanyards—Amazon failed to demonstrate that this could reasonably be construed as a conscious decision by the Board agents to favor "Vote Yes" messaging. (ROA.9826-9827.) The Union handed out the lanyards in question

regardless of the recipients' union sympathies. (ROA.1467-1470.) A significant percentage of the employees at the JFK8 facility wore colored lanyards on a day-to-day basis to hold their work-identification cards. (ROA.1446.)

Although the union lanyards stated "Vote Yes" in small white lettering (ROA.6279), this could easily be missed when worn around employees' necks or obscured by winter clothing (ROA.9826). Novoa herself did not testify that she saw any "Vote Yes" messaging in the voting tent. (ROA.2937.) Rather, she testified that the yellow lanyards she associated with the Union merely said "ALU." (ROA.2880, ROA.2908.) Indeed, few of Amazon's witnesses were aware that the yellow lanyards said "Vote Yes." (ROA.996-997, ROA.1047, ROA.2517, ROA.2787, ROA.3264.) Board agents may not have recognized the lanyards as election-related messaging, just as many employees did not. (ROA.9826.)

Moreover, the union lanyards were plainly different in character from the "Vote No" shirts and signs with prominent and highly visible messaging that Amazon relies on to allege disparate treatment by Board agents. (*Cf.* ROA.5785.) Even assuming that Board agents missed a large number of election-related items in the voting line—something not in itself objectionable—it takes a further leap of logic to conclude that reasonable employees would have understood the Board agents to be systematically favoring pro-union sentiments or attempting to influence employees' votes so as to call the conduct of the election into question.

Amazon's new suggestion that Board agents selectively told an employee-observer "to alert them to voters wearing 'Vote No' shirts" (Amazon-Br.66-67) is not properly before the Court, as Amazon did not present such claim to the Board (ROA.10141-10143). *See* 29 U.S.C. § 160(e). In any event, the implication that Board agents instructed observers to report only "Vote No" shirts is an implausible reading of the cited testimony. The witness was explaining a specific incident in which he brought a "Vote No" shirt to a Board agent's attention rather than directly confronting the employee wearing the shirt. (ROA.5033.) The witness did not specify whether he received such instruction from Board agents, or, for example, from the Union in advance. Moreover, the witness may have been referring to the standard, impartial instruction provided to volunteer observers for both sides to assist Board agents in monitoring the election. (ROA.4470, ROA.6972-6973.)

In sum, the Board and the Regional Director reasonably affirmed the Hearing Officer's conclusion that there is insufficient evidence employees would have interpreted Board agents' actions as exhibiting such partisan bias as to call into question the validity of the election. (ROA.9682 n.1, ROA.10042.)

### E. The Board Reasonably Found That the Cumulative Impact of Amazon's Various Objections Did Not Require a New Election

Having examined each of Amazon's objections in detail, the Board and the Regional Director further concluded, based on a careful review of "the entire record" (ROA.10062), that Amazon "failed to establish objectionable conduct,

both with respect to each individual objection and cumulatively" (ROA.9688). The primary legal standards applied in this case are inherently cumulative. For party-agent misconduct, the question is whether the agents' actions, considered as a whole, would have "reasonably tended to interfere with employees' free and uncoerced choice in the election." *Avis Rent-A-Car*, 280 NLRB at 581. Likewise, with respect to the agency's conduct in administering the election, the question is whether "the manner in which the election was conducted raises a reasonable doubt as to the fairness and validity of the election." *Polymers*, 174 NLRB at 282.

In finding insufficient grounds to invalidate the election in this case, the Board faithfully applied these well-established, axiomatic standards and considered the totality of the evidence. The Board acknowledged that some infractions by union agents did occur in the months leading up to the election, but explained why the likely impact of each such incident on the election was minimal to nonexistent. Thus, for example, while union-agent employees peaceably interrupted one of Amazon's initial small-group meetings in early February and tore down several Amazon campaign posters, the Board found that the impact of these incidents was negligible. (ROA.9686 & n.30, ROA.9860-9861.) These were isolated occurrences more than a month prior to the election, Amazon disciplined the employees responsible and the conduct ceased, and Amazon was not prevented from running an overwhelming pre-election campaign with hundreds of posters

and daily small-group meetings over many weeks. (ROA.9686 & n.30.) Similarly, though the Board did not take lightly the statements by union-agent Maldonado, *supra*, pp. 24-28, the potential impact of her conduct on the election is muted given the lack of evidence that a single employee was aware of the incident prior to voting. (ROA.9685-9686 & n.27.)

The Board further explained why, under settled precedent, occasional long lines across a five-day election are not objectionable irregularities, particularly given the lack of evidence that any employee who desired to vote was prevented from doing so. (ROA.9684, ROA.10032-10038.) Though there was at times a media presence near the periphery of the voting area—on Amazon's property—there is no evidence this dissuaded a single employee from voting. (ROA.9684, ROA.9796-9804, ROA.10036-10038.) Amazon's only other reference on appeal to an alleged irregularity—the assertion that Smalls was briefly present "in the no-electioneering zone during voting hours" (Amazon-Br.48)—is based on vague testimony the Hearing Officer expressly discredited (ROA.9815, ROA.10040). Nor would a union agent's mere presence inside the voting area have been coercive or objectionable. (ROA.9684.) Amazon has waived any substantive response to the Board's analysis of each of these issues.

As this Court has consistently affirmed, "the cumulative impact of a number of insubstantial objections does not amount to a serious challenge meriting a new

election." *Con-way*, 838 F.3d at 540; *see, e.g.*, *White Knight Mfg.*, 474 F.2d at 1067-68 (rejecting employer's reliance on purported "cumulative impact" of "a series of incidents which … had [little] demonstrated influence on the outcome of the election"). The operative question is not whether an election was "perfect" or whether "optimum practices were followed," but instead whether "the manner in which the election was held raises a reasonable doubt as to its validity." *Con-way*, 838 F.3d at 540; *see Klingler Elec.*, 656 F.2d at 89 ("[T]he need for a … new election is judged not against a standard of perfection, but against the likelihood that the outcome of the election might have been affected."); *NLRB v. Monroe Auto Equip.*, 470 F.2d 1329, 1332-33 (5th Cir. 1972) ("Here, the record in demonstrating the presence of some election disruptive activities also demonstrates their immateriality and harmlessness."). The Board reasonably concluded that the record here, considered in its entirety, does not require invalidating the election. (ROA.9688, ROA.10062.) The Board reasonably bolstered that conclusion by emphasizing that the Union won by more than 520 votes. (ROA.9686.) *Vicksburg Hosp. v. NLRB*, 653 F.2d 1070, 1076 (5th Cir. 1981) ("Establishing that the objectionable activities 'either tended to or did influence the outcome of the election' is especially difficult where … the union won by a wide margin.").

Although Amazon concedes, as it must, that the Board expressly found that the cumulative impact of the challenged conduct did not warrant invalidating the

election, Amazon claims the Board did not "properly" or "seriously" perform such analysis. (Amazon-Br.38, 42.) There is no basis for such claim. To the extent Amazon is suggesting that the Board's weighing of the record evidence was unreasonable, Amazon fails to identify any material error in the detailed analysis outlined above. This Court will not "reweigh the evidence, try the case de novo, or substitute [its] judgment for that of [the Board]." *Flex Frac*, 746 F.3d at 208.

With respect to the Union's considerable margin of victory in the election, Amazon's attempt to misdirect focus toward the margin as a percentage of the votes cast (Amazon-Br.44-45) misses the point. In *Phillips*, 304 NLRB at 16, the "20 percent margin" (Amazon-Br.44-45) represented 2 votes in a 6-to-4 election. In *Exeter1A Ltd. v. NLRB*, 596 F.2d 1280, 1282 (5th Cir. 1979), the union won by 19 votes with 13 challenged ballots, meaning the margin was potentially as few as 6 votes. Just as the Board has an obligation to more carefully scrutinize objections in a close election decided by a handful of votes, *McCarty Farms*, 24 F.3d at 728, a party seeking to overturn an election necessarily has a higher burden when alleging that coercion or irregularities were so pervasive that *hundreds* of employees were prevented from expressing their true preferences at the polls, *see NLRB v. Sumter Plywood Corp.*, 535 F.2d 917, 924 n.6 (5th Cir. 1976).

Amazon appears to be arguing in the alternative that, because the Board did not format its written decision to address each objection twice—first individually,

then cumulatively—the Court must ignore the Board's express conclusion that the record considered as a whole did not warrant setting aside the election. (Amazon-Br.40.) Contrary to Amazon, no precedent has ever required the Board to bifurcate its decisions into "two parts." (Amazon-Br.40.) Amazon misreads *PruittHealth-Virginia Park LLC v. NLRB*, 888 F.3d 1285 (D.C. Cir. 2018), which contradicts Amazon's position. In that case, the D.C. Circuit approved the Board's normal practice of "review[ing] and weigh[ing] the seriousness of the specific incidents of alleged misconduct [in series]" and then concluding with an "overall judgment" as to whether the record as a whole requires setting aside the election. *Id.* at 1298.

Moreover, as the Supreme Court admonished long ago, a reviewing court should not second-guess the Board's "explicit avowal" that it considered particular evidence as part of its analysis, unless the court's review of the record puts such conclusion "beyond reason." *NLRB v. Donnelly Garment Co.*, 330 U.S. 219, 229 (1947). The Board need only provide "a sufficient indication of the basis on which it acted, so that [a reviewing court] may consider whether that action embodies an abuse of discretion or error of law." *Natchez Coca-Cola Bottling Co. v. NLRB*, 750 F.2d 1350, 1353 (5th Cir. 1985); *see NLRB v. Dobbs Houses, Inc.*, 435 F.2d 704, 705 (5th Cir. 1970). Here, the Board expressly rejected Amazon's objections cumulatively and upon a consideration of the record as a whole, and the Court may review for substantial evidence supporting the reasonableness of that conclusion.

Each case must be evaluated on its own facts, and the Board's conclusion here that the March 2022 election should not be set aside is eminently "reasonable" and well within its statutory discretion. *Con-way*, 838 F.3d at 537.

## II. Amazon Was Not Denied Due Process at the Post-Election Objections Hearing or Prejudiced by Any of the Hearing Officer's Rulings

Having failed to establish objectionable conduct that would require setting aside the election, Amazon retreats to arguing that the Hearing Officer violated its due-process rights during the post-election objections hearing through a series of procedural rulings. (Amazon-Br.68-85.) Amazon rehashes arguments that the Board and the Regional Director already reasonably rejected in their decisions. (ROA.9682-9683 & n.2, ROA.10025-10027.)

In challenging the Hearing Officer's procedural and evidentiary rulings, Amazon has the burden of showing that the Hearing Officer abused her discretion. *UNF W.*, 844 F.3d at 457, 464; *see also NLRB v. Dal-Tex Optical Co.*, 310 F.2d 58, 62 (5th Cir. 1962) (reviewing denial of continuance to present additional evidence under "clear abuse of discretion" standard). Moreover, to establish a due-process violation, Amazon has the added burden of showing actual prejudice. *Marathon LeTourneau Co. v. NLRB*, 699 F.2d 248, 254 (5th Cir. 1983); *NLRB v. Safway Steel Scaffolds Co.*, 383 F.2d 273, 277 (5th Cir. 1967). An error is harmless unless it can be shown to have "affected the outcome of the underlying proceedings." *800 River Rd. Operating Co. v. NLRB*, 846 F.3d 378, 386 (D.C. Cir. 2017).

### A. The Regional Director and the Hearing Officer Permitted Amazon To Fully Litigate Its Election Objections

The Act does not entitle objecting parties to a post-election evidentiary hearing. *White Knight Mfg.*, 474 F.2d at 1068. Rather, such hearings lie in the discretion of the Board and the Regional Director. *See id.*; 29 C.F.R. § 102.69(c). Despite the Union's decisive victory in the election here, the Regional Director determined that Amazon raised sufficient factual allegations in its objections and pre-hearing offer of proof to justify an evidentiary hearing. (ROA.7002-7008.) The Hearing Officer ultimately permitted Amazon to introduce an extraordinary volume of evidence across a 24-day hearing—the majority of which addressed meritless objections that Amazon has since abandoned on review. Naturally, across the course of such a prolonged hearing, the Hearing Officer also sustained various evidentiary challenges and excluded evidence Amazon sought to introduce.

Amazon devotes a substantial portion of its brief to the question of whether the Board's Rules and Regulations permitted the Hearing Officer to exclude evidence outside the scope of the Regional Director's order directing a hearing, which Amazon alleges "improperly narrowed" its originally filed objections. (Amazon-Br.70-77.) The Regional Director correctly rejected Amazon's view as contrary to his well-established authority to determine the scope of a post-election hearing, and as contrary to the defined function of the Hearing Officer at such a

hearing. (ROA.10026; *see* ROA.9762.)[6] However, the Court need not get sidetracked addressing this issue for the simple reason that, as the Board and the Regional Director emphasized, Amazon was not prejudiced by any of the disputed rulings. (ROA.9682, ROA.10026-10027, ROA.10054.) *NLRB v. Nat'l Fixtures, Inc.*, 574 F.2d 1305, 1307 (5th Cir. 1978) (declining to address whether evidentiary rule was misapplied since employer showed no prejudice).

Amazon was permitted to lodge an offer of proof in the record for each line of questioning the Hearing Officer excluded as outside the scope of the Regional Director's order. (*E.g.*, ROA.156-160, ROA.1871-1873, ROA.2146-2147.) Likewise, Amazon was permitted to place each of the rejected exhibits into the record for further review by the Board and the Regional Director. (*E.g.*, ROA.943, ROA.4181.) The Board and the Regional Director considered all of the evidence proffered by Amazon, and, taking the allegations therein to be true, determined that none of the proffered testimony or exhibits would have established objectionable conduct or changed the outcome of the case. (ROA.9682, ROA.10026-10027.)

---

[6] Pursuant to Section 102.69(c)(1) of the Board's Rules and Regulations, the Regional Director's task is to review an objecting party's initial offer of proof, which is not reviewed by the other side, and to issue a formal Notice of Hearing specifying which allegations could be grounds for setting aside the election if proven at the hearing. 29 C.F.R. § 102.69(c)(1). The Regional Director need not accept an objection in its entirety, and the Board has made clear that *the Regional Director*, not the Hearing Officer, retains exclusively authority over the scope of the hearing. *Precision Prods. Grp.*, 319 NLRB 640, 640-41 (1995); *accord* NLRB Casehandling Manual, Part 2: Representation Proceedings §§ 11395.3, 11424.3(b).

The Regional Director, as affirmed by the Board, reproduced and expressly considered each of Amazon's objections as originally filed while explaining his reasons for rejecting them in their entirety. (ROA.10027, ROA.10028-10062.) Even if Amazon's premise were correct that the Hearing Officer wrongly narrowed the scope of the objections, the result is no different than if the Regional Director had dismissed portions of the objections without a hearing—a routine practice plainly within the Board's and the Regional Director's discretion. *NLRB v. Con-Pac, Inc.*, 509 F.2d 270, 272 (5th Cir. 1975); 29 U.S.C. § 102.69(c)(1)(i); NLRB Casehandling Manual, Part 2: Representation Proceedings § 11397.

Amazon's half-hearted attempts to establish prejudice (Amazon-Br.77-79) are unavailing. As a preliminary matter, the Court should not permit Amazon to engage in such skeletal briefing by asserting that "hundreds" of exhibits were improperly rejected (Amazon-Br.73) without specifically explaining how the Hearing Officer's evidentiary rulings were in error or how Amazon's case was prejudiced. Despite receiving 19,500 words for its opening brief, Amazon resorts to long, unexplained string cites purportedly showing the erroneous or prejudicial exclusion of evidence. (Amazon-Br.25, 77.) *But see Cazorla v. Koch Foods of Miss.*, 838 F.3d 540, 551 n.27 (5th Cir. 2016) ("Judges are not like pigs, hunting for truffles buried in briefs."). Nor should Amazon be permitted to sandbag the Board by unfairly expounding on new, unarticulated claims of prejudice in its reply brief.

*Flex Frac*, 746 F.3d at 208; *United States v. Stalnaker*, 571 F.3d 428, 439-40 & n.9 (5th Cir. 2009) (holding issues waived where party included "laundry list" of due-process violations, but failed to "fully explain them").

Amazon only preserves and meaningfully articulates one claim of alleged prejudice: that it was prevented from litigating Objection 16 and the "impact" of Smalls's arrest on the election. (Amazon-Br.77-79.) Amazon avers that it would have introduced evidence that employees heard about Smalls's arrest and discussed it at work (ROA.2725, ROA.3290), and that the Union publicized the arrest as part of its campaign (ROA.943, ROA.1871, ROA.4178-4181, ROA.4618-4619).

It is unclear how Amazon contends it was prejudiced. The Board found, and it is undisputed, that the Union "heavily disseminated information about the arrest in the hopes of garnering support for its campaign." (ROA.9688.) Any additional evidence that employees were aware of the arrest or that the Union publicized the arrest would have been duplicative of evidence already in the record on an issue of fact not in dispute. As the Board explained, the dissemination of news about Small's arrest is immaterial where "nothing in the conduct precipitating the arrest can reasonably be construed as coercive towards voters or otherwise tending to interfere with their free choice." (ROA.9688.) Nor would the subjective, after-the-

fact opinions of individual union supporters about the importance of the arrest for the campaign be any more probative on the question of coercion. (ROA.9688.)[7]

And even if they had been adequately briefed, Amazon's bare citations to other examples of the Hearing Officer excluding evidence (Amazon-Br.25, 77) are no more compelling. Amazon mischaracterizes the basis for numerous cited evidentiary rulings, which often had nothing to do with the Regional Director's purported narrowing of Amazon's original objections. Some of the cited evidence was excluded for being duplicative or cumulative. *E.g.*, ROA.1867-1873 (rejecting alternative version of video already in evidence), ROA.2145-2147 (barring cumulative testimony that there were lines at the polls), ROA.2727 (rejecting alternative version of video already in evidence). Other cited evidence was excluded for being beyond the scope of any fair reading of Amazon's objections—irrespective of the Regional Director's purported narrowing. *Compare* ROA.3544-3551 *with* ROA.9740; *compare* ROA.3633-3635 *with* ROA.9741.

Furthermore, the Board and the Regional Director expressly considered all of the excluded testimony and the rejected exhibits raised by Amazon below, and

---

[7] Amazon's claim that the Hearing Officer prevented employee Pat Cioffi from testifying that Small's arrest "allowed [Cioffi] to 'flip' between 400 and 500 voters" (Amazon-Br.44 n.11, 78-79) is inaccurate. Amazon *asked* Cioffi about such claim, and Cioffi denied that Smalls's arrest was his impetus for supporting the Union or that his pitch to coworkers had anything to do with Smalls's arrest. (ROA.4960-4968, ROA.4980.) The Hearing Officer instead rejected two post-election news articles with disputed quotes attributed to Cioffi. (ROA.4955-4969.)

reasonably found that none of the proffered evidence demonstrated objectionable conduct. (ROA.9682, ROA.10026-10027; *e.g.*, ROA.10054.) While Amazon disagrees with the Board's dismissal of its objections, it cannot show that any of the excluded evidence would "compel or persuade to a contrary result." *800 River Rd.*, 846 F.3d at 386; *cf. Donnelly Garment*, 330 U.S. at 235 ("In light of the Board's opinion, it would be doctrinaire to assume that it would have reached any other result if evidence of [the same facts] had been more voluminous.").[8]

**B. The Participation at the Hearing of Representatives for Region 29 Was Entirely Proper and Did Not Prejudice Amazon**

Amazon separately argues that the Regional Director and the Hearing Officer erroneously permitted representatives for Region 29 to participate at the post-election objections hearing. (Amazon-Br.79-83.) As the Board observed in denying Amazon's initial attempt to bar representatives for Region 29 from the hearing, the designation and participation of such representatives is a "well-

[8] Amazon's suggestion that the Board was not in possession of two rejected exhibits (Amazon-Br.84) is unfounded. Rather, in preparing the record for transmission to the Court, the Board's appellate counsel have regrettably been unable to locate two rejected exhibits. Those two exhibits have seemingly been misplaced in the several years that have elapsed since the Board and the Regional Director issued their decisions in the representation case. The transcript reveals that neither exhibit was probative to any issue on appeal. (ROA.3548-3550 (rejecting excerpt from video already in evidence), ROA.4291-4293 (rejecting union pamphlet stating undisputed facts).) Although Board counsel regrets the deficiency, Amazon has not suffered any prejudice. Amazon also declined Board counsel's invitation for Amazon to submit any missing materials to the Court.

established practice" when post-election objections are transferred to a different Region due to allegations of another Region's misconduct. (ROA.5502 & n.1.)

The Board and the Regional Director for Region 28 reasonably found that the Board attorneys chosen to represent Region 29—from two different Regions across the country—did not engage in any inappropriate conduct at the hearing. (ROA.9682-9683, ROA.10027.) The representatives repeatedly and expressly sought to confine their participation to factual allegations "directed toward Region 29." (*E.g.*, ROA.72.) Amazon's grievance that the representatives actually participated at the hearing—including by cross-examining witnesses and by challenging Amazon's preferred factual narrative regarding the conduct of the election (Amazon-Br.82-83)—merely reflects Amazon's continued disagreement with an established practice well within the Board's discretion in determining its own representation-case procedures. *Cf. Con-Pac*, 509 F.2d at 272.[9]

Nor has Amazon shown any prejudice. (ROA.9683, ROA.10027.) While the Region 29 representatives sometimes concurred in arguments or evidentiary objections raised by the Union, such concurrences had no effect on Amazon's case. The Hearing Officer explicitly avowed that the Region 29 representatives' joinder did not impact her rulings, because Amazon's counterarguments "on each

---

[9] The decision by the Board's General Counsel not to permit Region 29 personnel to testify (Amazon-Br.82) was also in full accordance with established precedent. (ROA.10027 (citing *Laidlaw Transit, Inc.*, 327 NLRB 315, 316 (1998)).)

substantive and evidentiary issue fail on their merits, regardless of who advanced the argument or objection." (ROA.9763-9764.) Amazon does not point to a single piece of evidence that was admitted or excluded, or a single substantive ruling, that can be tied to the Region 29 representatives' intervention alone.

Seemingly admitting that there was no prejudice, Amazon cursorily asserts that a showing of prejudice is unnecessary. (Amazon-Br.83.) Amazon cites no authority to support such an extraordinary claim. As the Board observed, agency attorneys' conduct at a *post*-election hearing could not possibly have impacted the election itself. (ROA.9682 n.4.) And parties do not possess a freestanding, enforceable right in the "impartiality" (Amazon-Br.83) of government attorneys. *Cf. United States v. Poole*, 735 F.3d 269, 278-79 (5th Cir. 2013) (noting that the role of reviewing courts is not to "punish" contemnor attorneys). That is especially true given the type of discretionary, non-adversarial investigatory hearing at issue.

Having reasonably rejected Amazon's objections and procedural challenges in the representation proceeding, the Board correctly found in the unfair-labor-practice proceeding that Amazon's refusal to recognize and bargain with the Union was a violation of the Act. (ROA.10252-10254.) Full enforcement is warranted.

## III. The Board Reasonably Declined To Order Additional Remedies Against Amazon for Its Unlawful Refusal To Bargain

The Union challenges the Board's unfair-labor-practice Order from the other direction and argues that the Board erroneously failed to order additional remedies

against Amazon, including additional notice-reading and distribution requirements. (Union-Br.21-45.) The Union's challenge warrants little response.

Section 10(c) of the Act grants the Board "broad discretionary" authority to remedy unfair labor practices by ordering "such affirmative action" as the Board determines "will effectuate the policies of [the Act]." *Fibreboard Paper Prods. v. NLRB*, 379 U.S. 203, 215 (1964) (citing 29 U.S.C. § 160(c)). The Court will not second-guess the contents of the Board's remedial order unless it can be shown to be "a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." *UNF W.*, 844 F.3d at 463.

The remedies ordered by the Board here—requiring Amazon to commence bargaining with the Union and to post a remedial notice—are the standard remedies that are routinely deemed sufficient in cases such as this one involving an employer's unlawful refusal to bargain. The Board reasonably concluded that the standard remedies "are sufficient to effectuate the policies of the Act" in this particular case. (ROA.10254 n.6.) No unusual circumstances were presented to the Board that would warrant deviating from the Board's standard practice. (ROA.9700-9701, ROA.9712-9721.) As such, the Board did not abuse its broad remedial discretion by declining to order additional remedies.

The Union's central claim that Amazon is a recidivist violator of the Act (Union-Br.7-16) is outside the scope of the record that was before the Board in this

case.  This case was decided on a motion for summary judgment—given Amazon's admitted refusal to recognize and bargain with the Union—and the record before the Board was limited to the summary-judgment pleadings and the record in the underlying representation case.  The Board has not yet reviewed or affirmed the vast majority of the cited allegations against Amazon, and the Board accordingly takes no position on those allegations here.  Moreover, while the remedies sought by the Union are within the Board's discretion to order, they are far from universally imposed remedies—even against recidivist violators.

**CONCLUSION**

The Board requests that the Court enter a judgment denying Amazon's and the Union's petitions for review, and granting enforcement of the Board's Order.

Respectfully submitted,

/s/ Eric Weitz
ERIC WEITZ
*Attorney*
National Labor Relations Board
1015 Half Street SE
Washington, DC 20570
(202) 273-3757

CRYSTAL S. CAREY
*General Counsel*

LYNISA B. MICHALSKI
*Acting Deputy General Counsel*

PETER SUNG OHR
*Associate General Counsel*

RUTH E. BURDICK
*Deputy Associate General Counsel*

MEREDITH JASON
*Assistant General Counsel*

National Labor Relations Board
October 2026

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

| | | |
|---|---|---|
| AMAZON.COM SERVICES LLC<br>Petitioner/Cross-Respondent | ) | No. 26-60238 |
| and | ) | |
| AMAZON LABOR UNION NO.1, INTERNATIONAL BROTHERHOOD OF TEAMSTERS<br>Petitioner | ) | Board Case No.<br>29-CA-310869 |
| v. | ) | |
| NATIONAL LABOR RELATIONS BOARD<br>Respondent/Cross-Petitioner | ) | |

**CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2026, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify further that the foregoing document was served on all parties or their counsel of record through the appellate CM/ECF system.

/s/ Eric Weitz
Eric Weitz
Attorney
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
(202) 273-2960

Dated at Washington, D.C.,
this 9th day of October, 2026

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

| | | |
|---|---|---|
| AMAZON.COM SERVICES LLC<br>Petitioner/Cross-Respondent | ) | No. 26-60238 |
| and | ) | |
| AMAZON LABOR UNION NO.1, INTERNATIONAL BROTHERHOOD OF TEAMSTERS<br>Petitioner | ) | Board Case No.<br>29-CA-310869 |
| v. | ) | |
| NATIONAL LABOR RELATIONS BOARD<br>Respondent/Cross-Petitioner | ) | |

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the Board certifies that its brief contains 12,927 words of proportionally spaced, 14-point type, and that the word-processing system used was Microsoft Word 365.

/s/ Eric Weitz
Eric Weitz
Attorney
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
(202) 273-2960

Dated at Washington, D.C.,
this 9th day of October, 2026